UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Isaiah Wilson,<br><br>         Petitioner,<br><br>  -against-<br><br>United States,<br><br>         Respondent. | <br><br>13-cr-777-03 (AJN);<br><br>16-cv-4994 (AJN)<br><br>OPINION & ORDER |

ALISON J. NATHAN, United States District Judge:

  Mr. Wilson has brought this petition under 28 U.S.C. § 2255 to vacate the judgment in this case and amend his sentence. For the reasons given below, the Court denies the petition.

**I. Background**

  The underlying facts of this case are not in dispute. On October 8, 2013, Mr. Wilson was charged pursuant to a three-count indictment for conspiracy to distribute cocaine and heroin (Count 1), conspiracy to commit Hobbs Act robbery (Count 2), and unlawful possession of a firearm in connection with a drug trafficking offense and a crime of violence (Count 3). 13-cr-777, Dkt. No. 10. Mr. Wilson pled guilty on March 24, 2014, to Counts 2 and 3 as charged in the Indictment. As to Count 1, Mr. Wilson pled to a lesser-included offense of conspiracy to distribute smaller amounts of cocaine and heroin than those charged in the Indictment. As part of Mr. Wilson's plea agreement, the parties stipulated to an applicable Sentencing Guidelines range of 262 to 327 months imprisonment. Pre-Sentence Report (PSR), ¶ 8. This high range reflected the parties' agreement that Mr. Wilson qualified as a Career Offender under Section 4B1.1(a) of the Guidelines because of two prior convictions for "crimes of violence." *Id.* These consisted of two New Jersey convictions from 2009, one for burglary and, most relevantly here, one for

1

Aggravated Assault in the Third Degree under N.J.S.A. § 2C:12-1B(5)(A). The Plea Agreement also included an appellate waiver if the sentence was within or below the agreed-upon Guidelines range. 13-cr-00777, Dkt. No. 156 at 7.

The PSR prepared by the U.S. Probation Department also concluded that Mr. Wilson qualified as a Career Offender and that the applicable range under the Guidelines was 262 to 327 months imprisonment. PSR ¶¶ 48, 96. At Mr. Wilson's sentencing on December 10, 2014, the parties did not dispute the Guidelines calculation. In particular, Mr. Wilson's counsel at the time conceded that Mr. Wilson's two prior convictions constituted crimes of violence for the purposes of the Career Offender enhancement. 13-cr-00777, Dkt. 115, Tr. 23:3-25, 24:1-25. This Court also conducted its own independent determination that the Guidelines calculation that the parties had agreed to was accurate. *Id.* at 6: 9-16. The Court sentenced Mr. Wilson to a total of 216 months imprisonment, consisting of 156 months on Counts 1 and 2, followed by a consecutive sentence of 60 months on Count 3. 13-cr-00777, Dkt. 108.

Mr. Wilson directly appealed his conviction on the grounds that his prior conviction for burglary did not qualify as a "crime of violence" under Section 4B1.2 of the Guidelines. Mr. Wilson's initial defense counsel was relieved as counsel on appeal and new counsel was appointed. 13-cr-00777, Dkt. No. 156 at 11. The Second Circuit dismissed the appeal on the grounds that Mr. Wilson had failed to show that the appellate waiver in his plea agreement was unenforceable. Dkt. No. 156 at 11-12.

On June 24, 2016, Mr. Wilson filed a motion under § 2255 arguing that under the Supreme Court's recent decision in *Johnson v. United States*, 135 S.Ct. 2551 (2015), his prior convictions for burglary and aggravated assault were not "crimes of violence" under Section 4B1.2(a)(2) of the Sentencing Guidelines. 13-cr-00777, Dkt. No. 125. On September 30, 2016,

the Court stayed the proceedings pending the Supreme Court's decision in *Beckles v. United States*, 137 S.Ct. 886 (2017), which squarely presented the issue of whether *Johnson* applies to Section 4B1.2 of the Sentencing Guidelines. 13-cr-00777, Dkt. No. 134. After the Supreme Court decided in *Beckles* that *Johnson* did not invalidate Section 4B1.2 of the Sentencing Guidelines, Mr. Wilson sought leave to file a supplemental brief in light of *Beckles*, which the Court granted. Dkt. No. 149. In his supplemental brief—which, for the reasons given below, the Court treats as an amendment to his petition—Mr. Wilson focuses solely on the question of whether it was ineffective assistance of counsel for his initial counsel to advise him that there was no legal basis to argue that his prior conviction for aggravated assault was not a crime of violence under Section 4B1.2(a).

## II. Discussion

Turning now to Mr. Wilson's petition, the Court first considers whether Mr. Wilsons' supplemental brief is an improper, successive petition or is procedurally barred because Mr. Wilson failed to raise these arguments on direct appeal. After addressing these two threshold arguments, the Court turns to the merits of Mr. Wilson's petition.

### A. Mr. Wilson's Amended Petition Is Not a Second Successive Petition

The Government argues that Mr. Wilson's petition should be denied because it constitutes a second, successive petition. The Court disagrees.

With certain exceptions, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) precludes a district court from considering "second or successive" petitions. *See* 28 U.S.C. § 2255(h). If a petition is second or successive, then a district court must transfer it to the relevant court of appeals for certification. *Torres v. Senkowski*, 316 F.3d 147, 151 (2d Cir. 2003). This is a threshold issue, since "reaching the merits of an uncertified second or successive § 2255

petition impermissibly circumvents the AEDPA's gatekeeping provisions." *Id.* (quoting *Corrao v. United States*, 152 F.3d 188, 191 (2d Cir.1998)). While the statute itself does not provide a definition of what constitutes a successive motion, the Second Circuit has held that "[i]n order . . . for a § 2255 motion to be considered successive, it must have been filed after the adjudication of a prior § 2255 motion has become 'final.'" *Fuller v. United States*, 815 F.3d 112, 113 (2d Cir. 2016) (citing *Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002)). The adjudication of a § 2255 motion is not considered "final until [the] petitioner's opportunity to seek review in the Supreme Court has expired." *Id.* (quoting *Whab v. United States*, 408 F.3d 116, 118 (2d Cir.2005)). In this case, Mr. Wilson filed his supplemental brief prior to *any* adjudication by this Court on the merits of his motion under § 2255. Therefore, instead of treating Mr. Wilson's supplemental brief as a successive petition, the Court construes it as a motion to amend. *See Ching*, 298 F.3d at 177 ("[I]n general, when a § 2255 motion is filed before adjudication of an initial § 2255 motion is complete, the district court should construe the second § 2255 motion as a motion to amend the pending § 2255 motion.").

The Government seeks to avoid this straightforward application of Second Circuit precedent by arguing that Mr. Wilson's initial petition was in effect finally adjudicated because Mr. Wilson recognized that his initial arguments were meritless and abandoned them. Yet, the Second Circuit has emphasized time and again that "[f]or a petition to be second or successive, it must at a minimum be filed subsequent to the *conclusion of a proceeding* that counts as the first." *Thai v. United States*, 391 F.3d 491, 494 (2d Cir. 2004) (emphasis added and internal quotation marks omitted). Thus, "for a subsequent petition to be considered 'second or successive,' bringing into play AEDPA's gatekeeping provisions, the disposition of an earlier petition *must* qualify as an adjudication on the merits." *Whab*, 408 F.3d at 118 (citing cases)

4

(emphasis added)); *Thai*, 391 F.3d at 494 ("[A]n initial petition will 'count' where it has been adjudicated on the merits or dismissed with prejudice." (citing cases)). This is because "the law allows every petitioner one full opportunity for collateral review." *Whab*, 408 F.3d at 118 (internal quotation marks omitted). The Government argues that under the Second Circuit's decision in *Thai*, abandoning meritless claims in an initial petition by filing a supplemental petition counts as a dismissal with prejudice. Yet the Government's reading of *Thai* skips a crucial step in the analysis. In *Thai*, the petitioner had requested leave to withdraw his initial petition and the district court had granted him leave to do so. *Thai*, 391 F.3d at 493-94. Accordingly, the proceedings had concluded when the petitioner filed his subsequent 2255 petition. The question before the Second Circuit was thus whether, once proceedings had already concluded, that conclusion was equivalent to a dismissal with prejudice. *Id.* at 494-97. It is true that in that later stage of the analysis, the Second Circuit looked to whether the first petition had been withdrawn as meritless. *Id.* But *Thai* does not stand for the proposition that a formal conclusion or disposition of an initial petition is not necessary for a petition to be successive under AEDPA. Nor would this be consistent with the Second Circuit's reading of "second or successive," which the court reiterated in *Thai*, 391 F.3d at 494.

The other case on which the Government relies, *Vitrano v. United States*, only confirms that a conclusion of proceedings is necessary before a supplemental petition could be deemed improperly successive. (*"Vitrano II"*) 721 F.3d 802 (7th Cir. 2013). Contrary to the Government's framing, *Vitrano II* does not stand for the proposition that where "proposed 'amended' claims are 'not amendments in any fair sense'" they are second or successive under AEDPA. Govt. Opp. at 11 (quoting *Vitrano II*, 721 F.3d at 807). Indeed, in an earlier decision in the *Vitrano* litigation, the Seventh Circuit had reversed the district court's holding that because

5

the motion to amend abandoned the initial claims it was second or successive under AEDPA. *Vitrano v. United States* ("*Vitrano I*"), 643 F.3d 229, 234 (7th Cir. 2011). The Seventh Circuit held that "the motion to amend did not constitute a 'second or successive' § 2255 petition because the initial motion had not been conclusively decided" and accordingly "remanded for consideration of the motion to amend." *Vitrano II*, 721 F.3d at 805. Thus, in *Vitrano* II, the Seventh Circuit was addressing a later step of the inquiry: whether it had been abuse of discretion under Rule 15(a) for the district court to deny a 2255 petitioner's motion to amend on the grounds that it was a bad faith attempt to circumvent AEDPA. *Vitrano II*, 721 F.3d at 806-07. This issue could only be reached if the motion to amend was not second or successive under AEDPA, since otherwise the district court would have lacked jurisdiction. *See, e.g., Torres*, 316 F.3d at 151. Accordingly *Vitrano I* and *Vitrano II* further support the conclusion that even if a supplemental petition abandons all the previous claims it is not formally second or successive under AEDPA in the absence of a formal decision on the initial motion.

Here there was no such formal disposition. Mr. Wilson did not move to withdraw his previous motion, nor was such a motion granted. Accordingly, there was no "conclusion of a proceeding" that could be with or without prejudice. *Thai*, 391 F.3d at 494. Nor was there a "disposition" of the initial petition that could "qualify as an adjudication on the merits." *Whab*, 408 F.3d at 118. While this is a formalist distinction, given the Second Circuit's clear instruction that such a conclusion or disposition is required to render a subsequent petition successive, the absence of such a disposition is dispositive. Finally, the Court notes that this conclusion is consistent with the Second Circuit's instruction that "AEDPA ensures every prisoner *one full opportunity* to seek collateral review" and "[p]art of that opportunity—part of every civil case— is an entitlement to add or drop issues while the litigation proceeds." *Ching*, 298 F.3d at 177

(emphasis added) (internal quotation marks omitted). Accordingly, Mr. Wilson's petition is not a successive petition under AEDPA and must instead be treated as a motion to amend.

**B.     Mr. Wilson's Motion to Amend is Granted**

Turning to whether Mr. Wilson's motion to amend should be granted, the proper standard for evaluating whether to allow it is Rule 15 of the Federal Rules of Civil Procedure. The Second Circuit has made clear that "[t]he general concern that civil plaintiffs have an opportunity for a *full adjudication* of their claims is particularly heightened in the AEDPA context, where the gatekeeping provisions of the statute stringently limit a petitioner's ability to raise further issues in a subsequent action." *Ching*, 298 F.3d at 177 (emphasis added). Mr. Wilson's initial petition was filed while he was representing himself *pro se* and in the AEDPA context, particular leeway should be given to amend an initial petition that was filed *pro se*. *See Thai*, 391 F.3d at 496 (2d Cir. 2004) ("*Pro se* litigants may not fully recognize the consequences of their motions, and courts must be careful not to deny them a meaningful opportunity to apply for § 2255 relief."). These considerations weigh strongly in favor of granting Mr. Wilson's motion. The Government counters that Wilson's proposed amendment is not in good faith because it is not actually an amendment, but rather an attempt to substitute one petition entirely for another. Govt. Opp. at 11 (citing *Vitrano II*, 721 F.3d at 807). It is true that while "Rule 15 provides that 'leave shall be freely given when justice so requires,' . . . the district court may deny that leave where necessary to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive." *Ching*, 298 F.3d at 180 (citing *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001)). But here again, the Government's reliance on *Vitrano II* is misplaced. In that case, the Seventh Circuit held that the district court below had not abused its discretion in denying a motion to amend on the ground that it had been made in bad faith, in significant part because the initial petition had been

7

fraudulent and the second petition was untimely. *Vitrano II*, 721 F.3d at 807. Neither of these factors are present here. Mr. Wilson's supplemental petition was timely. Dkt. No. 156 at 10. And while Mr. Wilson does abandon his earlier arguments in his supplemental brief, his earlier arguments were foreclosed by an intervening Supreme Court decision, which hardly constitutes bad faith on his part. Mr. Wilson's motion to amend is therefore granted.

Before proceeding to the merits of Mr. Wilson's amended habeas petition, the Court briefly addresses the claims raised in the initial petition. Mr. Wilson's supplemental brief does not press the claims from his initial motion. Nor does his supplemental reply respond to any of the Government's arguments concerning his initial claims. As a result, these claims are waived. *See, e.g., LaGrande v. Key Bank Nat. Ass'n*, 393 F. Supp. 2d 213, 216 (S.D.N.Y. 2005) (claims that are not renewed in an amendment are waived). Similarly, the arguments that Mr. Wilson appears to raise in a *pro se* declaration that he submitted to the Court on September 13, 2016, Dkt. No. 132, are also waived because they were not renewed in the amended petition nor did Mr. Wilson reply to the Government's arguments that these claims are without merit. Gov. Opp. at 6 n. 4. Even if the Court were to reach the merits of the claims, however, they would be denied as without merit. Mr. Wilson's conviction for burglary was a crime of violence under § 4B1.2(a)(2) of the Guidelines. *See United States v. Brown*, 514 F.3d 256, 264-69 (2d Cir. 2008) (burglary in third-degree under effectively identical New York statute was a crime of violence within the meaning of § 4B1.2(a)(2)). As the Supreme Court held, the residual clause § 4B1.2(a)(2) of the Guidelines is not void for vagueness. *See Beckles*, 137 S.Ct. 886. And finally, Hobbs Act robbery is a crime of violence for the purposes of a conviction under 18 U.S.C. 924(c). *See United States v. Hill*, 890 F.3d 51, 54-60 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 844 (2019).

### C. Mr. Wilson's Petition Is Not Procedurally Barred

The Government contends that Mr. Wilson's amended ineffective assistance of counsel claim is procedurally barred because it was not raised on direct appeal. This too is incorrect. It is settled law "that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003). And a petitioner may bring such a claim through a § 2255 petition "whether or not the petitioner could have raised the claim on direct appeal." *Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010) (citing *Massaro*, 538 U.S. at 509). The Government presents no argument for why this general rule does not apply here and fails to address it entirely. The ineffective assistance of counsel claim raised in Mr. Wilson's amended petition is therefore not procedurally barred.

### D. Mr. Wilson's Conviction for Aggravated Assault Was a Crime of Violence

The Court now turns to the merits of Mr. Wilson's amended petition. Mr. Wilson argues that his initial counsel was constitutionally ineffective because she failed to inform him that his prior conviction for aggravated assault was not a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2), which triggered the Career Offender enhancement and thus the heightened Guidelines range. Mr. Wilson's ineffective assistance of counsel claim depends on his argument that his prior conviction was not a crime of violence under § 4B1.2(a)(2). For the reasons below, the Court concludes that Mr. Wilson's reading of § 4B1.2(a)(2) is incorrect.

Looking first to the relevant text of the Guidelines, the Career Offenders sentencing enhancement at U.S.S.G. § 4B1.1(a) requires that, *inter alia*, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." At the time Mr. Wilson was sentenced, December 2014, a crime of violence for the purposes of § 4B1.1 was defined in § 4B1.2(a) as:

9

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

§ 4B1.2(a) (11/1/15).[1] The first prong is described as the "force clause" and the second as the "residual clause." *Beckles v. United States*, 137 S. Ct. 886, 890-91 (2017). The applicability of the residual clause to Mr. Wilson's conviction for aggravated assault is the primary question at issue here, as the Government does not respond to Mr. Wilson's argument that his prior conviction does not satisfy the force clause. Gov't Opp. at 15.

To determine whether Mr. Wilson's conviction for aggravated assault constitutes a "crime of violence" under the residual clause of § 4B1.2(a)(2), the Court applies the categorical approach. *United States v. Van Mead*, 773 F.3d 429, 432 (2d Cir. 2014) (in interpreting "the reach of § 4B1.2(a)(2)'s residual clause, we employ a categorical approach"). Under the categorical approach, a court must "consider an offense in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Id.* As to the application of the categorical approach to the residual clause of § 4B1.2(a)(2) specifically, a court need not find that "every conceivable factual offense covered by a statute . . . necessarily present[s] a serious potential risk of injury before the offense can be deemed . . . a crime of violence." *Id.* at 433 (quoting *James v. United States*, 550 U.S. 192, 208 (2007)). "Instead, 'the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another.'" *Id.*

---

[1] § 4B1.2 was subsequently amended and the residual clause at issue here was removed. For the purposes of this opinion, the Court will use § 4B1.2 to refer to the version of the Guidelines in effect at the time of Mr. Wilson's sentencing.

(quoting *James*, 550 U.S. at 208). The Court applies this approach to the New Jersey aggravated assault statute at issue here.

The Second Circuit has provided two tests to determine whether an offense qualifies as a crime of violence with the meaning of U.S.S.G. § 4B1.2(a)(2). Which test a court will apply depends on the *mens rea* requirement of the offense. Offenses with "'a stringent *mens rea* requirement,' demanding that a defendant act knowingly, intentionally, or the like as to the core element or elements of the offense" need only "pose a risk 'similar in degree' to its 'closest analog' among the exemplar crimes to qualify as a 'violent felony' under the residual clause." *Van Mead*, 773 F.3d at 433 (quoting *Sykes v. United States*, 564 U.S. 1 (2011), *overruled on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015)). On the other hand, for "a strict liability, negligence, or recklessness offense" to qualify as a violent felony, it "must not only 'involve[] conduct presenting a serious potential risk of physical injury to another' but must also be 'roughly similar' to the exemplar crimes by typically consisting of 'purposeful, violent, and aggressive conduct.'" *Id.* Mr. Wilson contends that because paragraphs (1) and (2) of the definition of "simple assault" can be satisfied by recklessness or negligence, § 2C:12-1b(5)(a) lacks a strict *mens rea* requirement. However, New Jersey courts analyzing § 2C:12-1b(5)(a) have consistently rejected the argument "that since recklessness will support a conviction for simple assault, it is also sufficient to elevate the simple assault to aggravated assault." *State ex rel. S.B.*, 333 N.J. Super. 236, 245 (App. Div. 2000) *see also State v. Green*, 318 N.J. Super. 361, 375–76 (App. Div. 1999), *aff'd*, 163 N.J. 140 (2000) (same). Instead, "[t]he requisite level of culpability is knowing conduct" and thus the "State must prove beyond a reasonable doubt that the actor knew the victim was a law enforcement officer acting in the performance of his duties while in uniform or exhibiting evidence of his authority." *State ex rel. S.B.*, 333 N.J. Super. at

245 (citing *State v. Moll*, 206 N.J.Super. 257, 260 (App.Div.), *certif. denied*, 103 N.J. 498 (1986)); *see also State v. Green*, 318 N.J. Super. at 375–76. Because § 2C:12-1b(5)(a) requires that a defendant act knowingly, the Court will apply the Second Circuit's test for offenses with a stringent *mens rea* requirement.

Applying this test, § 2C:12-1b(5)(a) qualifies as a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2). Because § 2C:12-1b(5)(a) requires that a defendant act knowingly, to qualify as a crime of violence it need only pose a risk of violence similar in degree to an analogous example crime to qualify as a crime of violence. *Van Mead*, 773 F.3d at 433. The exemplary crimes listed in § 4B1.2(a)(2) are "burglary of a dwelling, arson, or extortion" or a crime that "involves use of explosives." In determining whether aggravated assault on a law enforcement officer poses a similar risk to these offenses, the Supreme Court's analysis in *Sykes* is instructive. 564 U.S. at 9. There the Court held that vehicular flight was a violent felony in part because, like burglary, "it can end in confrontation leading to violence." *Id.* This risk was heightened because "[t]he attempt to elude capture is a direct challenge to an officer's authority" that could lead officers to "escalate their response" with the result that "[c]onfrontation with police is the expected result." *Id.* at 10. Aggravated assault under § 2C:12-1b(5)(a) plainly poses a similar risk of violent confrontation, which could result in harm not only to the individual and the officers, but also potentially bystanders. Indeed the likelihood of such a confrontation with police is even greater than with vehicular flight because § 2C:12-1b(5)(a) necessarily involves assault upon a law enforcement officer. This means that the offense poses a "serious potential risk of injury of another." *Van Mead*, 773 F.3d at 433 (internal quotation marks omitted). As a result, by the very nature of the offense, aggravated assault on a law enforcement officer poses, if anything, an even more serious risk of violent harm than burglary or vehicular

flight. Finally, while the Supreme Court in *Sykes* also looked to empirical studies to buttress its conclusion—evidence which is absent from the record here—the Court made clear that its opinion did not turn on this statistical evidence. *Sykes*, 564 U.S. at 10-11. The Court accordingly holds that aggravated assault under § 2C:12-1b(5)(a) qualifies as a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a).

### E. Mr. Wilson's Counsel Was Not Constitutionally Ineffective

Because Mr. Wilson's conviction for aggravated assault was a crime of violence under the sentencing guidelines, Mr. Wilson's counsel's failure to advise him otherwise does not constitute ineffective assistance of counsel. To succeed on his ineffective assistance claim, Mr. Wilson must show that: (1) his attorney's performance was below an "objective standard of reasonableness" as compared to "prevailing professional norms" and (2) that his attorney's failure to meet this standard resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984). As to the first prong, Mr. Wilson argues that his prior counsel's advice that there was no legal reason to dispute that his aggravated assault conviction was a crime of violence fell below an objective standard of reasonableness. Yet because § 2C:12-1b(5)(a) qualifies as a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2), it did not fall below an objective standard of reasonableness for Mr. Wilson's counsel to inform him that there was no legal grounds to challenge the Career Offender enhancement. Mr. Wilson has therefore failed to meet his burden on his motion.

## III. Conclusion

Because the Court holds that Mr. Wilson's counsel was not constitutionally ineffective, his habeas petition is denied. Since Mr. Wilson "has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue." *See, e.g., Perez v.*

*United States*, No. 04-cv-7148 (JSR), 2007 WL 685949, at *1 (S.D.N.Y. Jan. 29, 2007) (citing 28 U.S.C. § 2253). The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of Court shall dismiss this petition and close case number 16-cv-4994.

SO ORDERED.

Dated: August 7, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge